UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ITPEU PENSION FUND, ITPEU HEATH AND WELFARE FUND, and ITPEU ANNUAL BENEFIT FUND,<br><br>Plaintiffs,<br><br>v.<br><br>FRONTLINE SECURITY SERVICES,<br><br>Defendant. | Civ. No. 15-cv-6512 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of Plaintiffs ITPEU Pension Fund, ITPEU Health & Welfare Fund, and ITPEU Annual Benefit Fund (collectively, "ITPEU") for default judgment against Defendant Frontline Security Services ("Frontline"). For the reasons set forth below, I will enter default judgment against Frontline. ITPEU is awarded $43,823.65, comprising (i) $41,434.65 in liquidated damages; and (ii) $2,389 in attorneys' fees and costs. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

**BACKGROUND**

Plaintiffs ITPEU Pension Fund, ITPEU Health & Welfare Fund, and ITPEU Annual Benefit Fund are trust funds established pursuant to the National Labor Relations Act and Employment Retirement Income Security Act ("ERISA"). (Compl.[1] ¶ 4)

Defendant Frontline is a government contractor which employs security personnel represented by ITPEU, AFL-CIO (the "Union"). On August 27, 2014,

---

[1] "Compl." refers to the Complaint filed August 31, 2015. (Dkt. No. 1)

1

Frontline signed a Memorandum of Acceptance agreeing to be bound be the collective bargaining agreement ("Labor Contract") entered into between the Union and Frontline's predecessor contractor. (Compl. Ex. 1) Frontline also agreed to be bound by the Declarations of Trust for the various funds ("Trust Agreements"). (*Id.*; Dkt. Nos. 6-10–6-12)

Under the Labor Contract, the employer is required to make monthly payments into welfare, pension, and annuity funds, among others. The employer was required to contribute certain amounts per hour worked by each employee covered by the Labor Contract, up to forty hours per week: $0.05 to the Pension Fund, $3.65 to the Annual Benefit Fund, and $3.81 to the Health & Welfare Fund. (Ex. 1 (Dkt. No. 6-3) pp. 2–4) The contributions were to be submitted monthly, and were due by the fifteenth day of the next calendar month. (*See, e.g.,* Agreement and Decl. of Trust Establishing the ITPE Health & Welfare Fund (Dkt. No. 6-10) p. 14) If an employer fails to make the required payments, the Trust Agreements authorize the trustees to bring an action on behalf of the plan pursuant to Sections 502(g)(2) and 515 of ERISA. (*Id.* p. 14-15) Delinquent payments are subject to an interest rate of 1.5% per month and liquidated damages of 20% of the amount of the delinquent contributions. (*Id.* p. 15)

Frontline failed to make required payments to the Funds for the months of April, May, June and July of 2015, in the amount of $230,508.46. (Compl. ¶¶ 10–12) In August 13, 2015, ITPEU demanded payment from Frontline, and notified Frontline that the Welfare Fund had suspended the employees' healthcare benefits due to lack of payment. (*Id.* ¶ 9; Ex. 2 (Dkt. No. 6-4)) Frontline failed to remit payment within the ten-day time period.

On August 31, 2015, ITPEU filed its complaint in this action. (Dkt. No. 1) On October 6 and 7, 2015, Frontline confirmed via email that payments to satisfy the unpaid obligations had been sent. (Exs. 2–4 (Dkt. Nos. 6-4–6-6)) Frontline has not, however, made any other payments against the liquidated damages ITPEU claims are owed on the delinquent contributions.

2

Frontline, though duly served, has not answered the complaint. (Dkt. No. 13) On October 13, 2015, the clerk entered default against Frontline. On February 26, 2016, ITPEU filed this motion for a default judgment. ITPEU seeks (i) liquidated damages in the amount of $41,434.65; (ii) $1,824 in attorney's fees; and (v) $565 in costs, for a requested award of $43,823.65.

**LEGAL STANDARD AND DISCUSSION**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

3

## I. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Service of a corporate entity, such as Frontline, may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or by following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1). New Jersey law states in relevant part that service on a corporation may be made

> by serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may nevertheless be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C), by

> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or

4

over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Here, the prerequisites for default judgment have been met. The Complaint was filed on August 31, 2015. (Dkt. No. 1) Frontline's Office Manager, Judith Welch, was served with the Summons and a copy of the Complaint on September 11, 2015. (Dkt. No. 3) Defendant had twenty-one days (until October 2, 2015) to file an answer or otherwise respond to the Complaint pursuant to Fed. R. Civ. P. 12(a). The clerk entered default against Frontline on October 13, 2015. (Dkt. Entry following Dkt. No. 4) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

## II.   Three Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### a. Factor 1

The evaluation of the first factor is complicated, of course, by Frontline's failure to answer or to oppose this motion. My independent review of the record, however, does not suggest that the claims asserted by ITPEU against Frontline are legally flawed or that Frontline could mount a meritorious

defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that ITPEU has successfully stated claims for relief as against Frontline.

The complaint alleges that Frontline violated ERISA and the Labor Management Relations Act of 1947 ("LMRA"). ERISA requires employers who make contributions under a collective bargaining agreement to do so in accordance with the terms of that agreement. *See* 29 U.S.C § 1145. The LMRA allows a court to hear "suits for violation of contracts between an employer and a labor organization." 20 U.S.C. § 185(a). ITPEU alleges that Frontline was bound by the Labor Contract with the Union and related trust agreements and was required to make monthly contributions to various benefits funds based upon the number of hours worked per employee. (Compl. ¶¶ 6, 7; *see also* Ex. 1 pp. 2–4) ITPEU has provided documentation that Frontline was bound by the Labor Contract pursuant to a Memorandum of Acceptance signed by Frontline on August 27, 2015. (Compl. Ex. 1 (Dkt. No. 1-1)) ITPEU has also submitted the related Trust Agreements, pursuant to which Frontline was obligated to make the alleged payments. (Dkt. Nos. 6-10–12) ITPEU alleges that Frontline failed to make those required payments between April and July, 2015. (Compl. ¶¶ 9, 10) In accordance with the Labor Contract and Trust Agreements, ITPEU made a demand for payment from Frontline for the delinquent contributions, but payment was not received. (*Id.* ¶ 9, Ex. 2 (Dkt. No. 1-2)). Nothing in the documents before the Court suggests that Frontline possesses a meritorious defense.

### b. Factors 2 and 3

The second and third factors weigh in favor of default. Frontline was properly served on September 11, 2015, but failed to appear and defend itself in any manner. It is clear that ITPEU has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension*

*Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default. *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *2. In this case, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment against Frontline, and I will grant the motion for default judgment.

### III. Remedies

ITPEU seeks two types of compensation, totaling $43,823.65. (*See* Br. in Support of Motion for Judgment by Default (Dkt. No. 6-1) ("Br.") at pp. 7–9) Specifically, ITPEU seeks (1) $41,434.65 in liquidated damages; and (2) $2,389.00 for attorneys' fees and costs. (*See id.*)

ITPEU has submitted documentary evidence in support of its demands, while Frontline has submitted nothing and has failed to appear or respond in any manner. An *ex parte* hearing would thus serve little additional purpose, so I rule based on the record before me.

ITPEU has documented the delinquent payments made to the Funds after filing of the complaint in this case. (Exs. 2–4 (Dkt. Nos. 6-4–6-6) (noting wires paid to funds in October, 2015)) As of October 20, 2015, there were no

contributions remaining outstanding. (Ex. 5 (Dkt. No. 6-7)) However, because there were unpaid contributions outstanding at the time ITPEU filed the complaint, ITPEU has requested liquidated damages in the amount of 20% of the unpaid contributions pursuant to 29 U.S.C. 1132(g)(2). (*See* Br. pp. 7-9) Specifically, ITPEU seeks $12,975.40 in liquidated damages for the Welfare Fund (representing 20% of $64,877), $28,100.25 for the Annual Benefit Fund (representing 20% of $140,504.77), and $359 for the Pension Fund (representing 20% of $1,799.46, for a total liquidated damages figure of $41,434.65. (Ex. 5 (Dkt. No. 6-7)) ERISA provides that a court shall award "an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." 29 U.S.C. §1132(g)(2)(C). The Declaration of Trust here provides for "liquidated damages equal to 20% of the unpaid contributions." (Ex. 8 (Dkt. No. 6-10) p. 15) It is not documented whether interest was paid on the delinquent contributions, but because there are no more delinquent contributions outstanding, there is no further interest. At any rate, I would find, within my discretion, that an award of liquidated damages is warranted. That liquidated damages figure—20% of $207,181.23—equals $41,434.65. I will award ITPEU liquidated damages of $41,434.65.

As to attorneys' fees and costs, I adopt ITPEU's analysis. ITPEU has adequately documented its attorneys' fees, which do not seem unreasonable or disproportionate. (*See* Trust Agreements § 7.02(d) (giving prevailing party the right to recover "reasonable attorneys' fees and costs"); Decl. of Susan A. Murray, dated Feb. 25, 2016 (Dkt. No. 6-8) ¶ 4; Ex. 7 (Dkt. No. 6-9) (billing statement)) I will enter a judgment that includes $1,824 in attorneys' fees and $565 in costs, for a total of $2,389.

The total judgment awarded is, therefore, $43,823.65. Post-judgment per diem interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

**CONCLUSION**

For the foregoing reasons, the motion is granted as to defendant Frontline, and a default judgment will be entered against defendant Frontline and in favor of plaintiff ITPEU in the total amount of $43,823.65, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order and judgment will issue.

_____
KEVIN MCNULTY, U.S.D.J.

Dated:  June 15, 2016